IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FLORETTA WILLIAMS-JOHNSON, *

 *Plaintiff*, *

 v. * Civil Action No. RDB-24-1197

PARIS FOODS CORPORATION, *

 *Defendant*. *

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this employment discrimination case, Plaintiff Floretta Williams-Johnson ("Plaintiff" or "Ms. Williams-Johnson") alleges that her former employer, Defendant Paris Foods Corporation ("Defendant" or "Paris Foods") terminated her based on her sex in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T § 20-606. *See generally* (ECF No. 17).[1]  Between August 2021 and September 5, 2023, Ms. Williams-Johnson worked as a Machine Operator at a Paris Foods facility in Maryland. (ECF No. 44-3 at 4.)  On August 31, 2023, she gifted a female co-worker a transparent negligee, homemade lotion, and a Leap Pad game intended for her son. (*Id.* at 19–20.)  On September 5, 2023, that co-worker reported this interaction, including an allegation that Ms. Williams-Johnson touched her hand without her consent, to the Manager of Paris Foods' Human

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number and document number, rather than to the page and exhibit numbers provided by the parties' various submissions.

Resources Department.  Paris Foods terminated Ms. Williams-Johnson's employment later the same day.

Prior to filing this action and consistent with the administrative exhaustion requirements of Title VII, Ms. Williams-Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("E.E.O.C."). *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)).  The E.E.O.C. did not proceed with her complaint, and she therefore received a right-to-sue letter on April 3, 2024.  (ECF No. 1-1).  On April 24, 2024, Ms. Williams-Johnson initiated this action by filing in this Court a two-Count Complaint against Paris Foods.  *See* (ECF No. 1).  After this Court dismissed that Complaint without prejudice and with leave to amend, *see* (ECF No. 15), she filed the operative, one-Count Amended Complaint (ECF No. 17), alleging that Paris Foods discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and § 20-606 of the MFEPA.[2]  This Court denied Defendant's Motion to Dismiss the Amended Complaint, *see* (ECF No. 23), and allowed this matter to proceed through discovery, *see* (ECF No. 40).  Now pending before this Court is Defendant's Motion for Summary Judgment (ECF No. 42).  Plaintiff has responded in Opposition (ECF No. 44), and Defendant has replied (ECF No. 46).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED.  There is simply no proffered evidence that Ms. Williams-Johnson was terminated because of her sex.

---

[2] Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction of Ms. Williams-Johnson's claim under Title VII.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction of Ms. Williams-Johnson's claim under MFEPA.

**BACKGROUND**

In August 2021, Ms. Williams-Johnson began working as a Machine Operator at Paris Foods' facility in Trappe, Maryland.[3]  (ECF No. 44-3 at 4; ECF No. 44-11 at 4; ECF No. 44-1 at 1.)  Although persons in the role of Machine Operator are charged with controlling "the flow of the material that[] [is] being processed" on the production line, Ms. Williams-Johnson never performed such work during her employment.  (ECF No. 44-3 at 4.)  Instead, because Paris Foods did not have a machine for her to run at the facility, she worked at a packing table or in the warehouse, made boxes, cleaned, and performed other duties as assigned.  (*Id.* at 4, 5.)  Ms. Williams-Johnson reported directly to Production Supervisor Angela Jones ("Ms. Jones"), who supervised production processes but lacked authority to hire or terminate employees.  (*Id.* at 5–6; ECF No. 42-7 ¶¶ 2–3.)  Ms. Jones in turn reported directly to Production Manager Kyrie Manokey ("Mr. Manokey").  (ECF No. 42-7 ¶ 10.)

Ms. Williams-Johnson's employment discrimination claim arises from an interaction with another employee, Kenyatta Peterson ("Ms. Peterson"), in late-August and early-September 2023.  She alleges that she faced disparate discipline as compared to male employee William Cruz Vazquez ("Mr. Vazquez").  The below factual background summarizes Ms. Williams-Johnson's disciplinary history, the events of her termination, and her allegations as to Mr. Vazquez.

**I.      Prior disciplinary incident in Ms. Williams-Johnson's personnel file**

On January 25, 2023, Ms. Williams-Johnson received a written warning for "Disrupting production/making accusatory statements."  (ECF No. 42-3 at 2.)  Ms. Jones was the

---

[3]  Except where otherwise indicated, these facts are not in dispute.

supervisor on duty at the time.  (*Id.*)  The warning pertained to an incident in which Paris

Foods employee Bryan Farrow ("Mr. Farrow") reported that Ms. Williams-Johnson told their

co-workers that he stole her lunch from the breakroom.  (*Id.* at 3.)  He informed Ms. Williams-

Johnson that he had not taken her lunch and requested that she cease suggesting to others that

he had done so.  (*Id.*)  Following this interaction, Ms. Williams-Johnson accused Mr. Farrow

of verbally threatening her.  (*Id.* at 2.)  After reviewing camera footage and employees' written

statements, Paris Foods concluded that Ms. Williams-Johnson's accusations against Mr.

Farrow were unsubstantiated.  *See* (*id.* at 2–10).

Accordingly, on January 25, 2023, Paris Foods issued the following written warning to

Ms. Williams-Johnson:

> On Wednesday January 18th between the times of 10:00 a.m. & 10:15 a.m. [Ms. Williams-Johnson] was involved in a verbal incident with a fellow employee. During the incident [Ms. Williams-Johnson] stated that the co-worker verbally threatened her by saying "you're going to get yourself f***** up."  After thorough investigation it was concluded that the legitimacy of the statement could not be confirmed by any witness nor camera footage.  This kind of accusation is taken very serious & will not be tolerated.  With this being said this incident is worthy of a written warning, any further incident of this nature will result in a progressive disciplinary action.

(*Id.* at 2.)[4]  Production Manager Kyrie Manokey signed the written warning as supervisor, Ms.

Jones signed as a witness, and then-Human Resources Manager Katie Levitan ("Ms. Levitan")

also signed the document.  (*Id.*)  Ms. Williams-Johnson refused to sign the warning.  (*Id.*)  This

---

[4] Although the written warning (ECF No. 42-3 at 2) is dated January 23, 2023, each signature is dated January 25, 2023.  *See* (*id.*).

written warning was the only disciplinary incident in Ms. Williams-Johnson's personnel file prior to her termination.[5]  (ECF No. 44-10 at 4.)

## II.    Incident with Kenyatta Peterson

In July 2023, Kenyatta Peterson ("Ms. Peterson") began working as a Production Associate Two at Paris Foods.  (ECF No. 42-15 at 4–5.)  Like Ms. Williams-Johnson, she also reported directly to Ms. Jones.  (*Id.* at 5.)  On August 31, 2023, Ms. Williams-Johnson left a bag of gifts for Ms. Peterson in the employee breakroom.[6]  (*Id.* at 6; ECF No. 42-13 at 18.)  The bag included a bottle of homemade lotion, a LeapPad game, and a transparent lingerie gown or negligee.  (ECF No. 42-13 at 18–19, 20–21.)  Ms. Peterson testified at her deposition that she thanked Ms. Williams-Johnson for the gifts, which did not make her feel uncomfortable, and she could not recall whether she said anything else to Plaintiff about the gifts.  (ECF No. 42-15 at 6, 8.)

Later the same day, Ms. Peterson told Ms. Jones about the gifts.  (*Id.* at 7.)  Ms. Peterson testified that she showed Ms. Jones the gifts because she was new to the job and thought Ms. Jones was friendly, but she later learned of some dislike between Ms. Jones and Ms. Williams-Johnson.[7]  (*Id.* at 8.)  Ms. Peterson testified that Ms. Jones understood the gifts to reflect Ms.

---

[5]  Ms. Levitan testified at her deposition and noted in her affidavit that she issued Ms. Williams-Johnson a verbal warning in June 2023 "for instigating personnel conflicts among her co-workers," but that warning is not reflected in Ms. Williams-Johnson's personnel file.  (ECF No. 42-5 at 3; ECF No. 44-10 at 4.)

[6]  Ms. Williams-Johnson testified at her deposition that she has a practice of giving gifts to co-workers, and Ms. Levitan knew of that practice.  (ECF No. 42-13 at 28–29.)

[7]  There exists some dispute as to whether Ms. Jones disliked Ms. Williams-Johnson such that she was eager to see her terminated.  *See* (ECF No. 44-3 at 33 (explaining that Ms. Cooper told Ms. Williams-Johnson that Ms. Jones intended to have Ms. Williams-Johnson fired); (ECF No. 44-7 at 8 (former employee Aquwina Cooper testifying that she told Ms. Williams-Johnson that Ms. Jones had "been trying to get rid of her" and "wasn't fond of her at all").  As explained further below, this dispute is not material to Ms. Williams-Johnson's claims. Moreover, even if it were material, a co-worker or supervisor's personal dislike of an employee "due to personality conflicts will not suffice" to establish a sex discrimination claim.  *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008).

Williams-Johnson's sexual orientation, and she instructed Ms. Peterson to return them. (*Id.* at 7, 8.) The parties dispute whether Ms. Jones ever commented on Ms. Williams-Johnson's perceived sexual orientation. *Compare* (ECF No. 42-7 ¶ 9 (Ms. Jones' affidavit that she never "inquire[d] whether Ms. Williams-Johnson was gay")); *with* (ECF No. 44-3 at 40, 41, 42 (Ms. Williams-Johnson's testimony that Ms. Peterson told her that Ms. Jones asked whether she was gay); ECF No. 44-6 at 12, 22; ECF No. 44-7 at 4, 28 (former Paris Foods employee Aquwina Cooper testifying that Ms. Jones may have implied that Ms. Williams-Johnson may have been gay)).

Ms. Peterson left Ms. Jones' office after informing her of the gifts, but she returned later the same day to tell Ms. Jones that Ms. Williams-Johnson had grabbed her hand. (ECF No. 42-15 at 10.) At her deposition, Ms. Peterson testified that she could not remember whether she told Ms. Jones that Ms. Williams-Johnson grabbing her hand made her feel uncomfortable, but that she probably did say that.[8] (*Id.* at 9.) According to Ms. Jones, Ms. Peterson complained that the negligee gift made her uncomfortable and that Ms. Williams-Johnson grabbed her hand "in a way that she did not like." (ECF No. 42-7 ¶¶ 7, 8.) Ms. Williams-Johnson does not dispute that she gifted Ms. Peterson the lotion, child's toy, and transparent nightgown, but she denies that she touched Ms. Peterson's hand. (ECF No. 44-3 at 33.)

---

[8] Ms. Peterson testified initially that Ms. Williams-Johnson grabbed her hand, but she could not remember if she told Ms. Jones that it made her uncomfortable. (ECF No. 42-15 at 9–10.) When asked if it was possible that she told Ms. Jones the incident made her uncomfortable, she responded that she "probably did" tell her that. (*Id.* at 9.) She also stated that she did not tell anyone else that she felt uncomfortable about Ms. Williams-Johnson grabbing her hand. (*Id.* at 11.)

After Ms. Peterson informed Ms. Jones that Plaintiff touched her hand, Ms. Jones stated that she had to report the incident to her supervisor, Mr. Manokey.  (ECF No. 42-15 at 10.)  Mr. Manokey suggested that Ms. Peterson submit a written report, but Ms. Peterson told him that she did not want to submit any written statement that would result in Ms. Williams-Johnson's termination.  (*Id.* at 10–12.)  Mr. Manokey and Ms. Jones told Ms. Peterson to "take the weekend" to decide if she would like to submit a report when work resumed the following week.  (ECF No. 42-16 at 5.)  Mr. Manokey then informed Ms. Levitan about the incident. (ECF No. 42-14 at 6–7.)

Upon returning to work on September 5, 2023, Ms. Peterson wrote a complaint against Ms. Williams-Johnson.  (ECF No. 42-15 at 13, 14.)  She believed that Ms. Jones wanted her to file a complaint, and Mr. Manokey directed her to an empty room where she sat alone to handwrite and sign the complaint.  (*Id.* at 13–14.)  Her complaint was dated September 5, 2023, and stated:

> I (Kenyatta) came in the breakroom getting ready for my shift and there was a white bag sitting where I usually sit and it was for me from [Plaintiff]. She told me to open it and I pulled out a white piece of [ ] lingerie. [Plaintiff] said when she seen [sic] this piece of cloth she thought of me. I didn't know how to feel about that so I told Ms. [Jones]. As the day went by it was also a hand grab from [Plaintiff] I didn't care for do [sic] to I didn't know how to take [ ] her after giving me something I didn't approve of.

(ECF No. 42-8 at 2.)  Ms. Jones did not tell Ms. Peterson what to write in the complaint.  (ECF No. 42-15 at 18.)

### III.    Termination of Ms. Williams-Johnson's employment

As relevant to the incident between Ms. Williams-Johnson and Ms. Peterson, Paris Foods' Employee Handbook Rule 4.3, "Anti-Discrimination and Harassment Policy,"

prohibits harassment and provides that "[e]xamples of conduct toward individuals of the same or opposite sex that may constitute sexual harassment include, but are not limited to . . . Physical contact such as patting, hugging, pinching, or brushing against another's body." (ECF No. 42-9 at 4.)   The Employee Handbook states that "[i]n keeping with this commitment, [Paris Foods] will not tolerate discrimination or harassment of Paris Food Corporation's employees by anyone, including . . . co-workers . . . ." (*Id.*)  Relatedly, Rule 4.4 of the Employee Handbook describes Paris Foods' "Respectful Workplace Policy," which includes "maintaining a work environment that is free of discrimination and harassment." (*Id.*) Ms. Williams-Johnson electronically signed the Employee Handbook on April 25, 2023. (*Id.* at 2.)

In September 2023, Ms. Levitan was Paris Foods' Human Resources Manager and held final authority to hire and fire employees. (ECF No. 42-14 at 4.)  Her responsibilities included investigating employment issues to determine whether termination was appropriate. (*Id.* at 7.) On September 5, 2023, Ms. Levitan began investigating the incident between Ms. Williams-Johnson and Ms. Peterson.  She reviewed the complaint and spoke to Ms. Peterson and Tavon Jones ("Mr. Jones"), an employee who witnessed Ms. Peterson receive the gifts. (*Id.* at 7–9.) It is disputed whether Ms. Levitan met with Ms. Williams-Johnson during this investigation. Ms. Levitan has testified that she met with her on September 5, 2023, but Ms. Williams-Johnson refused to provide a written statement. (*Id.* at 9, 12.)  Ms. Williams-Johnson has testified that Ms. Levitan did not meet with her during the investigation and she was never given the opportunity to submit a statement. (ECF No. 44-3 at 30.)  Based on her investigation, Ms. Levitan understood that Ms. Williams-Johnson had gifted Ms. Peterson a

transparent negligee and made unwanted contact with her hand, but no eyewitnesses or security cameras observed the physical contact. (*Id.* at 9–10.)

On September 5, 2023, the same day that Ms. Levitan began her investigation, she decided to terminate Ms. Williams-Johnson's employment. (ECF No. 42-14 at 7, 11–12.) She alone made the ultimate termination decision without participation by other individuals. (*Id.* at 7.) Nevertheless, Mr. Manokey drafted the termination notice, which Ms. Levitan reviewed. (*Id.* at 11.) Dated September 5, 2023, the notice identified the type of offense as "Violation of Company Policy" and stated:

> On Thursday, August 31st between the times of 6:30 a.m. & 7:00 a.m. [Plaintiff] inappropriately gifted a piece of intimate clothing (see through night gown) to a fellow coworker while in the upstairs breakroom. The coworker ill received this gesture & immediately reported this to their immediate supervisor. Also later in the afternoon another situation took place in which [Plaintiff] broke the touch barrier & grabbed the same individuals [sic] hand which was yet again inappropriate & unwanted contact. The incidents listed above are a violation of company policy in section 4.4 of the "Respectful workplace policy." This situation is very serious & is intolerable therefore warranting an immediate termination effective 9/5/2023.

(ECF No. 42-10 at 2.) Mr. Manokey signed the notice of termination as supervisor and Ms. Levitan signed it as witness. (*Id.*)

Ms. Levitan and Mr. Manokey then met with Ms. Williams-Johnson to formally terminate her employment. (ECF No. 44-3 at 29.) Ms. Jones was not present at this meeting. (*Id.* at 30.) Ms. Levitan told Ms. Williams-Johnson that she had to be treated like a man and, even though she was known to frequently give gifts, the gift in this instance reflected poor judgment. (*Id.* at 29.) Ms. Williams-Johnson did not deny touching Ms. Peterson's hand, (*id.* at 33), but she refused to sign the notice of termination, (ECF No. 42-10 at 2).

### IV.   December 2023 incident involving Mr. Vazquez

Ms. Williams-Johnson compares her treatment to that of a male Paris Foods employee, William Cruz Vazquez ("Mr. Vazquez"), who works as a Machine Operator on one of Paris Foods production lines.[9]  (ECF No. 42-13 at 12; ECF No. 44-2 at 4.)  In December 2023, an altercation allegedly occurred between Mr. Vazquez and a female Paris Foods employee, Arlinda Carr ("Ms. Carr").[10]  (ECF No. 42-17 at 12, 6–8.)  Specifically, Mr. Vazquez went into the bathroom of the employee break room without closing the door, and Ms. Carr inadvertently observed him in the bathroom.  (*Id.* at 6–7.)  Another employee, Christian Brunecz ("Mr. Brunecz") was using the same restroom at the time, and he heard someone scream and close the door.  (*Id.* at 6.)  Upon leaving the restroom, he observed Mr. Vazquez in an argument with Ms. Carr in which she stated that he should have closed the bathroom door.  (*Id.* at 7.)  The argument did not involve any physical touch, but both Ms. Carr and Mr. Vazquez raised their voices.  (*Id.* at 8.)

Mr. Brunecz intervened to ask Mr. Vazquez to return to work and then privately asked Ms. Carr if she wanted to report the incident to Human Resources.  (*Id.*)  Ms. Carr stated that she did not want to file a report.  (*Id.* at 7–8.)  Mr. Brunecz then told Ms. Levitan about the incident.  (*Id.* at 8.)  In December 2023, Paris Foods was renovating the employee break room, including the restroom.  (ECF No. 42-5 ¶14.)  Prior to the renovations, the bathroom door closed automatically after opening, but due to construction, the door was not yet re-equipped to close automatically in December 2023.  (*Id.*)  After Mr. Brunecz informed Ms. Levitan about

---

[9] Mr. Vazquez has different job responsibilities than Plaintiff had while she worked at Paris Foods.  (ECF No. 42-13 at 12, 25.)

[10] Ms. Carr has since passed away.  (ECF No. 42-17 at 11–12.)

the incident, she instructed maintenance to install a bathroom door that automatically closed. (*Id.*)  Ms. Carr never filed a complaint against Mr. Vazquez.  (*Id.* ¶ 16; ECF No. 42-13 at 17.) Additionally, no sexual harassment or harassment complaint has been filed against Mr. Vazquez during his twenty-five years of employment at Paris Foods.  (ECF No. 42-5 ¶¶ 15, 17.)  Nevertheless, Plaintiff has testified that Ms. Carr told her that Mr. Vazquez urinated in front of Ms. Peterson and assaulted Ms. Carr during this incident.[11]  (ECF No. 44-3 at 14–15.)

### V. Procedural History

On April 24, 2024, Ms. Williams-Johnson initiated this action by filing in this Court a two-Count Complaint (ECF No. 1) against Paris Foods, alleging (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T § 20-606 (Count I); and (2) defamation (Count II).  This Court granted Defendant's Motion to Dismiss the Original Complaint (ECF No. 10) but authorized Plaintiff to amend her claims.  *See* (ECF Nos. 15, 16.)  Ms. Williams-Johnson then filed the operative Amended Complaint, (ECF No. 17), in which she alleges one Count of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T § 20-606.  This Court denied Defendant's Motion to Dismiss the Amended Complaint, *see* (ECF No. 23), and this matter proceeded through discovery.  *See* (ECF No. 40).  On March 9, 2026, Defendant filed the pending Motion

---

[11] Plaintiff did not witness the incident between Mr. Vazquez and Ms. Carr, but she has testified that Ms. Carr informed her of the incident in January 2024.  (ECF No. 17 ¶ 20; ECF No. 42-13 at 13.)  Accordingly, as explained below, she has not proffered admissible evidence of her allegations that Mr. Vazquez urinated in front or assaulted a co-worker.

for Summary Judgment (ECF No. 42).  Plaintiff has responded in Opposition (ECF No. 44), and Defendant has replied (ECF No. 46).  This matter is now ripe for review.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  This Court "must not weigh

12

evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *In re French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## ANALYSIS

Paris Foods seeks summary judgment as to Ms. Williams-Johnson's claims of sex discrimination in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA"). *See generally* (ECF No. 42). As this Court has repeatedly recognized, "MFEPA is 'the state law analogue of' and in large part modeled after Title VII." *Doe v. Cath. Relief Servs.*, 529 F. Supp. 3d 440, 446 (D. Md. 2021) (quoting *Schwenke v. Ass'n of Writers & Writing Programs*, 510 F. Supp. 3d 331, 335–36 (D. Md. 2021)). For this reason, Maryland courts often look to federal precedent when evaluating MFEPA claims.[12] *Gibson v. Md. Motor Vehicle Admin.*, Civ. No. BAH-20-3220, 2024 WL 51132, at *7 (D. Md. Jan. 4, 2024) (citing *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011)). Ms. Williams-Johnson raises both claims of sex discrimination in the same Count, and the parties have briefed both claims together. Like the parties, this Court analyzes both claims concurrently.

---

[12] "[W]here the MFEPA materially departs from the language of Title VII, the MFEPA is not read in lockstep with the federal statute." *Watrous v. AIRtec, Inc.*, Civ. No. TJS-24-2076, 2025 WL 2494324, at *10 (D. Md. Aug. 28, 2025) (citing *Doe v. Cath. Relief Servs.*, 300 A.3d 116, 127 (Md. 2023)). For example, Title VII's administrative exhaustion requirements differ from those applicable to MFEPA. *See Hollis v. Morgan State Univ.*, 153 F.4th 369, 380 (4th Cir. 2025). As Judge Blake of this Court has noted, "sex discrimination claims under MFEPA and Title VII are 'coterminous'" and, therefore, subject to the same analysis. *Doe*, 529 F. Supp. 3d at 448 (quoting *Schwenke v. Ass'n of Writers & Writing Programs*, 510 F. Supp. 3d 331, 336 (D. Md. 2021)).

"Title VII prohibits employers from 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment . . . because of such individual's . . . sex.'" *Franovich v. Hanson*, 687 F. Supp. 3d 670, 681 (D. Md. 2023) (alterations in original) (quoting 42 U.S.C. § 2000e–2(a)(1)).  Discrimination based on sexual orientation constitutes prohibited sex discrimination under Title VII and MFEPA.  *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 683 (2020) (Title VII); *Cath. Relief Servs.*, 529 F. Supp. 3d at 447–48 (MFEPA).  To establish sex discrimination under either statute, a plaintiff must demonstrate "that her employer took an adverse action against her *because of her sex.*" *Franovich*, 687 F. Supp. 3d at 682 (emphasis added) (citing 42 U.S.C. § 2000e-2(a)); *accord Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 322 (4th Cir. 2024).  A plaintiff may meet this burden either by providing "direct evidence" of discrimination or, in the absence of direct evidence, under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018); *see Gunter v. Aluitiiq Advanced Sec. Sols., LLC*, Civ. No. JRR-20-3410, 2026 WL 547920, at *7–8 (D. Md. Feb. 27, 2026) (applying *McDonnell Douglas* to MFEPA claim).  In this case, Plaintiff contends that she has identified genuine issues of material fact that preclude summary judgment under either method of establishing discrimination.

### I.    Direct Evidence

Ms. Williams-Johnson has not identified any direct evidence of discrimination.  "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Bandy v. City of Salem, Va.*, 59 F.4th 705, 711 (4th Cir. 2023) (quoting *Taylor v. Va. Union Univ.*, 193

F.3d 219, 232 (4th Cir. 1999) (en banc) *abrogated on other grounds by Desert Palace v. Costa*, 539 U.S. 90, 98 (2003)).  Direct evidence of discriminatory intent proves such intent "without any inference or presumptions." *Samuels v. City of Balt.*, Civ. No. RDB-09-458, 2009 WL 3348134, at *5 (D. Md. Oct. 15, 2009) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) *overruled on other grounds* 517 U.S. 308 (1996)).  "Consequently, a plaintiff faces a demanding standard when attempting to demonstrate direct evidence." *Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 779 (D. Md. 2008).  As Judge Hollander of this Court has explained, "[e]ven if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Allen v. Balt. Cnty. Bd. of Educ.*, Civ. No. ELH-21-1006, 2023 WL 5352416, at *10 (D. Md. Aug. 21, 2023).

In this case, Plaintiff has not identified statements that "reflect directly the alleged discriminatory attitude," *Bandy*, 59 F.4th at 711, and have "a nexus with the adverse employment action," *Allen*, 2023 WL 5352416, at *10.  According to Plaintiff, Ms. Jones told Ms. Peterson and others that Ms. Williams-Johnson may "like girls" and questioned whether she "was gay or something."  (ECF No. 44-6 at 11; ECF No. 44-3 at 40, 41, 42; ECF No. 44-2 at 6–7; ECF No. 44-7 at 28).  Defendant disputes this allegation, (ECF No. 42-7 ¶ 9), but such dispute is immaterial.  Even if the comments occurred, they are not direct evidence of discrimination with a nexus to Plaintiff's termination.  Although inappropriate in a workplace, Ms. Jones' alleged comments do not directly reflect any animus based on sex or sexual orientation.  *Compare* (ECF No. 44-6 at 11 (stating that Ms. Jones questioned whether Ms. Williams-Johnson was "gay or something" or "liked girls") *with Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016) (suggesting that comment that supervisor "had a problem

with [plaintiff's] sexual orientation" would be direct evidence of sex discrimination). Any discriminatory attitude within the comments must be inferred,[13] but direct evidence requires no inference. *Jordan*, 577 F. Supp. 2d at 779 (quoting *O'Connor*, 56 F.3d at 548).

Moreover, Plaintiff has not shown any nexus between the comments and her termination. As the Fourth Circuit has recognized:

> It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced.

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010). For this reason, "to prove discriminatory animus, the derogatory remark cannot be stray or isolated and '[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (alterations in original) (quoting *McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 686 (7th Cir. 1991)) *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003). A plaintiff must show that an allegedly discriminatory supervisor did more than "have substantial influence on the ultimate decision or play a significant role in the decision[.]" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (internal quotation marks omitted). As Judge Chuang of this Court has put it, "a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, 'principally responsible for, or the actual decisionmaker

---

[13] Indeed, Plaintiff herself suggests that "a reasonable juror could conclude" that Ms. Jones' alleged "dislike [of Plaintiff] arose from Ms. Jones's belief that Ms. Williams-Johnson was gay and, consequently, orchestrated Ms. Williams-Johnson's termination out of homophobic animus." (ECF No. 44-2 at 7.) This argument hinges on inference because the comments reflect no facial discriminatory animus. Such circumstantial evidence is not to be discounted but rather applies to Plaintiff's assertion of discriminatory intent based on indirect evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

16

behind, the action,' such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation." *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004) (en banc) *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *see also Ousley v. McDonald*, 648 F. App'x 346, 348–49 (4th Cir. 2016) (evaluating motivation of final decisionmaker *only* and discounting motivation of alleged discriminator where he "merely acted as a consultant" to final decisionmaker).

In this case, Ms. Levitan was the decisionmaker, and there exist no facts from which a reasonable jury could find a nexus between Ms. Jones' comments and Ms. Levitan's termination decision. Ms. Jones lacked authority to hire or fire employees. Ms. Levitan testified that she held sole authority to terminate employees, and she alone made the final decision to terminate Ms. Williams-Johnson. (ECF No. 42-14 at 7, 11; ECF No. 42-16 at 7.) Ms. Levitan stated that she consulted with Mr. Manokey about the incident and investigation, (ECF No. 42-14 at 7), and there is no evidence that Ms. Jones participated in the termination decision. Plaintiff testified that only Ms. Levitan and Mr. Manokey were present at her termination, and only Ms. Levitan and Mr. Manokey signed the termination notice. (ECF No. 44-3 at 30; ECF No. 42-10 at 2.) Ms. Jones' involvement in the incident ceased after she reported it to Mr. Manokey on August 31, 2023. (ECF No. 42-7 at 3 ¶¶ 10–11; ECF No. 42-16 at 4–5; ECF No. 44-5 at 5–6.) Put differently, Ms. Jones was *not* "principally responsible for, or the actual decisionmaker behind" the termination. *Chang Lim*, 310 F. Supp. 3d at 602. Her alleged comments did not "bear directly on the contested employment decision[,]" and, therefore, lack the nexus required to constitute direct evidence of discrimination. *Bandy*, 59 F.4th at 711 (quoting *Taylor*, 193 F.3d at 232).

17

## II.    Indirect Evidence

Absent direct evidence, a plaintiff may establish her claim of discrimination under the burden-shifting "evidentiary standard" set forth in *McDonnell Douglas*. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). First, a plaintiff must make out a prima facie case of discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). Second, "[t]he burden of production . . . shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)). Finally, the burden of production returns to the plaintiff to establish "by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The Fourth Circuit has cautioned that district courts must not "become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination' of the ultimate question of discrimination." *Id.* (alteration in original) (quoting *Merritt*, 601 F.3d at 294, 295). As explained below, Ms. Williams-Johnson has not presented indirect evidence that would allow a reasonable jury to reach an inference of sex discrimination.

18

### A. Proposed comparator for sex discrimination

Ms. Williams-Johnson has satisfied the first three elements of a prima facie claim of sex discrimination, but she has not established "different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. This "element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in *some* respects, but similarly situated *in all respects.*'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (emphasis in original) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019)) (internal quotation marks omitted). "To that end, the plaintiff must prove that she and the comparator 'dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'" *Id.* (quoting *Haynes*, 922 F.3d at 223–24). "Specifically, there must be 'sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Johnson v. Balt. City, Md.*, 163 F.4th 808, 815 (4th Cir. 2026) (quoting *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017)). Ms. Williams-Johnson has identified Mr. Vazquez as a comparator, but she has not clearly established that he engaged in similar conduct.[14]

As a preliminary matter, the record reflects only that Mr. Vazquez was in the bathroom with the door open and he argued with Ms. Carr shortly thereafter. To the extent that Plaintiff contends that Mr. Vazquez urinated in front of Ms. Peterson or assaulted Ms. Carr during the

---

[14] It is undisputed that both Mr. Vazquez and Ms. Williams-Johnson were supervised by Ms. Jones.

19

December 2023 dispute, she has proffered no admissible evidence of such conduct. At summary judgment, a non-moving party must identify evidence that she will be able to present in an admissible form at trial. *See Butler v. Wash. Metro. Area Transit Auth.*, Civ. No. AAQ-22-2711, 2025 WL 1018942, at *2 (D. Md. Apr. 4, 2025) (citing *U.S. Dep't of Housing & Urban Dev't v. Cost Control Mkt. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 926 n.8 (4th Cir. 1995)). Thus, "[h]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022) (quoting *Md. Highways Contractors Ass'n v Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). To support her assertions as to Mr. Vazquez, Plaintiff cites both her own deposition testimony and the deposition testimony of Mr. Brunecz. *See* (ECF No. 44-2 at 4). Yet, Plaintiff has admitted that she has no personal knowledge of the incident and that she only recounted what Ms. Carr told her during a phone call in January 2024. (ECF No. 44-3 at 14–15.)

Since the alleged December 2023 incident, Ms. Carr has passed away. (ECF No. 42-17 at 12; ECF No. 42-1 at 11 n.1.) The record does not reflect that she ever testified in this matter, and Ms. Williams-Johnson's testimony recalling Ms. Carr's purported out-of-court statements is inadmissible hearsay. *See* Fed. R. Evid. 801(c); *Lyons*, 35 F.4th at 290 n.4. Plaintiff cannot present Ms. Carr's statements in a form admissible at trial because she is unavailable and none of the exceptions enumerated in the Federal Rules of Evidence apply to her statements. *See, e.g.*, Fed. R. Evid. 803, 804. Separately, Mr. Brunecz testified that (1) he heard someone scream and close the door; and (2) he intervened in an argument between Mr. Vazquez and Ms. Carr, but no assault occurred. (ECF No. 42-17 at 6–10.) Thus, Plaintiff has not presented admissible evidence as to her allegations of exposure and assault. *See Cost Control*

*Mkt. & Sales Mgmt. of Va., Inc.*, 64 F.3d at 926 n.8.  Absent such evidence, she cannot show that Mr. Vazquez's conduct was sufficiently similar to her own.

The Fourth Circuit has explained that a plaintiff identifies a valid comparator where she shows that the comparator "engaged in similar conduct." *Haynes*, 922 F.3d at 224.  "[T]o be meaningful, the comparison must clearly show *the similarity in misconduct* but dissimilarity in consequences between plaintiff and the comparator-employee." *Keerikkattil v. Sawin*, No. 1:16-CV-00827, 2017 WL 2525132, at *2 (E.D. Va. June 9, 2017) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 134 (4th Cir. 2002)).  Generally, a comparator is not similarly situated where their conduct was less serious or was not reported to a supervisor.  *See Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) (explaining "the similarity between . . . the seriousness of the[] respective offenses must be clearly established"); *Sook Yoon v. Sebelius*, 481 F. App'x 848, 850 (4th Cir. 2012) (concluding comparator was not similarly situated where supervisors received complaints about plaintiff but not about comparator).  An evaluation of the seriousness of the conduct at issue may consider the intent of the plaintiff and comparator. *See Balderson v. Lincare, Inc.*, 62 F.4th 156, 166 (4th Cir. 2023) (concluding male comparator did not engage in similar conduct because he lacked intent attributed to plaintiff).  Ultimately, where an employer "could have reasonably concluded . . . that the difference between the two [instances of misconduct] was material[,]" the plaintiff has not satisfied the comparator element of a prima facie sex discrimination claim.  *Id.*

In this case, Mr. Vazquez's alleged conduct in being in the restroom with the door open and arguing with Ms. Carr thereafter was less serious than Ms. Williams-Johnson's conduct. There is no evidence that Mr. Vazquez deliberately left the door open with the knowledge that

another employee would see him in the restroom, physically touched a co-worker without consent, or became subject to a human resources complaint based on his behavior. By contrast, Ms. Williams-Johnson gifted items to a co-worker in a manner that Paris Foods believed to show poor judgment, allegedly touched that co-worker's hand without her permission, and was the subject of that co-worker's complaint to human resources. (ECF No. 44-3 at 29.) Paris Foods "reasonably could have concluded" that these differences in intent, unwanted physical contact, and formal complaint by an involved co-worker were "material" such that they warranted differing responses.[15]  *Balderson*, 62 F.4th at 166; *see also Sook Yoon*, 481 F. App'x at 850. Thus, the conduct at issue is not sufficiently comparable to render Mr. Vazquez a valid comparator. *See Bryant*, 288 F.3d at 134; *Lightner*, 545 F.3d at 265.

Furthermore, there exist material differences between the disciplinary records of Mr. Vazquez and Ms. Williams-Johnson. A difference in disciplinary records may invalidate a comparator. *See, e.g.*, *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 510–512 (4th Cir. 1993) (concluding plaintiff failed to show disparate treatment after reviewing "all the disciplinary records presented" for the identified comparators); *Tinsley v. City of Charlotte*, 854 F. App'x 495, 505 (4th Cir. 2021) (mem.) ("In such a system of progressive discipline, comparator status thus will depend in part on the plaintiff and the putative comparator having similar records of

---

[15] Notably, the record reflects that up to the point of Ms. Peterson's formal complaint to human resources, Defendant treated both instances very similarly. In both instances, a supervisor became aware of the interaction and encouraged an involved party to report it to human resources. In both cases, that party initially expressed that they did not wish to make a report, and the supervisor encouraged them to take some time to think about that decision. The supervisor then notified a higher authority: Ms. Levitan in Mr. Vazquez's case and Mr. Manokey, who in turn notified Ms. Levitan, in Ms. Williams-Johnson's case. At that point, although human resources had become aware of an incident, no formal investigation commenced. As to the incident involving Mr. Vazquez, Ms. Levitan and Mr. Brunecz coordinated with the maintenance team to ensure that an automatically closing door was reinstalled in the employee breakroom restroom. As to the incident involving Ms. Williams-Johnson, the record reflects that Ms. Levitan only began to investigate after Ms. Peterson made a formal report on September 5, 2023. (ECF No. 42-14 at 8.)

22

misconduct, both in number and in nature."); *Bailey v. TJX Cos., Inc.*, Civ. No. PX-20-3204, 2023 WL 3645510, at *4 (D. Md. May 25, 2023) (explaining that identified comparators "each had sufficiently dissimilar disciplinary records, rendering them ill-suited for comparison"). Mr. Vazquez has never been subject to any assault, sexual harassment, or harassment complaint in the workplace. Ms. Williams-Johnson, however, previously received a written disciplinary note in her file for "Disrupting production/making accusatory statements," which warned progressive discipline may apply in the future. (ECF No. 42-3 at 2); *Bailey*, 2023 WL 3645510, at *4 (considering difference in written warnings to differentiate comparator and plaintiff). As discussed above, unlike Mr. Vazquez, Ms. Williams-Johnson's conduct in this case resulted in a subsequent written complaint from a co-worker.

Where, as here, the alleged comparator's conduct was not formally reported and materially differed in nature, a reasonable jury cannot conclude that the "alleged misconduct was sufficiently similar as to be 'comparable in seriousness.'" *Cosby*, 93 F.4th at 716 (quoting *Haynes*, 922 F.3d at 223). Ms. Williams-Johnson has not shown that she was subject to disparate treatment based on comparator evidence. Accordingly, she has not met her burden to establish the final element of a prima facie case of discrimination under the first step of the *McDonnell Douglas* burden-shifting framework. *See id.* (affirming summary judgment to defendant based on plaintiff's failure to offer valid comparator evidence).

### B. Legitimate non-discriminatory reasons and alleged pretext

"[N]otwithstanding the virtues of comparator evidence, it of course remains the case that a plaintiff is 'not required as a matter of law to point to a similarly situated . . . comparator in order to succeed' on a discrimination claim." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720

(4th Cir. 2013) (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). The critical question in every Title VII discrimination case is whether the plaintiff can establish an inference of unlawful discrimination, including by circumstantial evidence of sex discrimination. *Tinsley*, 854 F. App'x at 505; *see also Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 736 (4th Cir. 2023) (collecting cases). Even assuming, *arguendo*, that Ms. Williams-Johnson could establish a prima facie case of discrimination absent comparator evidence, she has not shown that Defendant's asserted nondiscriminatory reasons for her termination are pretextual.

"The Fourth Circuit has made clear that . . . once an employer 'articulates a reason for discharging the plaintiff not forbidden by law, it is not [courts'] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'" *Sadeghi v. Inova Health Sy.*, 251 F. Supp. 3d 978, 994 (E.D. Va. 2017) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Paris Foods asserts three reasons for its decision to terminate Ms. Williams-Johnson's employment: (1) Ms. Peterson's complaint; (2) Paris Foods' policies regarding appropriate workplace conduct; and (3) Ms. Williams-Johnson's prior written warning in January 2023. (ECF No. 42-1 at 24; ECF No. 42-8 at 2; ECF No. 42-3 at 2; ECF No. 42-9 at 4-5.) Conduct deemed inappropriate or unprofessional pursuant to Defendant's employee handbook, constitutes a legitimate, non-discriminatory reason for termination. *See, e.g.*, *Pearlman v. Pritzker*, 564 F. App'x 716, 719 (4th Cir. 2014) (mem.) ("[I]nsubordination, poor workplace demeanor, or angry outbursts . . . can constitute a legitimate and nondiscriminatory basis for taking an adverse employment action.); *Mathews v. Giant Food, Inc.*, 187 F. Supp. 2d 486, 489 (D. Md. 2002) (collecting cases treating violation of company policy as nondiscriminatory reason to terminate employee based on

24

unsatisfactory performance); *Kelly v. Boeing Co.*, Civ. No. 1:16-cv-00196, 2016 WL 7217661, at *4 (E.D. Va. Dec. 12, 2016) ("An employee's unprofessional and disruptive behavior is a legitimate, nondiscriminatory reason for discipline and termination, as is terminating an employee under a progressive disciplinary policy."). Accordingly, Paris Foods has met its burden to show a nondiscriminatory reason for termination, and the burden returns to Ms. Williams-Johnson to demonstrate that such reasons are pretextual.

As the Supreme Court has recognized, at this final step of the *McDonnell Douglas* framework the plaintiff's "burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). Ultimately, she must show "that the employer's proffered explanation is unworthy of credence." *Id.* Judge Hollander of this Court has recognized that "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, [t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 735–36 (D. Md. 2023) (internal quotation marks omitted) (quoting *Swaso*, F. App'x at 748). For the reasons set forth above, Ms. Williams-Johnson has not clearly established that Mr. Vazquez engaged in conduct sufficiently similar to allow a jury to reach an inference of discrimination via comparator evidence. *See, e.g.*, *Cosby*, 93 F.4th at 716 (explaining comparator's alleged conduct must be "similar in seriousness" (quoting *Haynes*, 922 F.3d at 223)). Thus, she has not shown pretext based on comparator evidence.

Nor has Ms. Williams-Johnson met her burden to adduce other evidence that would allow a reasonable jury to conclude that Defendant's stated nondiscriminatory reasons for her

termination are pretextual.  To demonstrate pretext, Ms. Williams-Johnson must "specifically refute the facts" that "support [the employer's] nondiscriminatory reasons for discharging her." *DeJarnette*, 133 F.3d at 299.  She asserts as circumstantial evidence of discrimination that: (1) Mr. Vazquez was not investigated or terminated for his alleged conduct in December 2023; (2) Ms. Jones allegedly made comments about her sexual orientation in relation to the gifts she gave Ms. Peterson; and (3) Ms. Levitan rapidly investigated the incident and commented at the time of Ms. Williams-Johnson's termination that a man would be treated the same.[16]  As explained above, however, neither Mr. Vazquez's conduct nor Ms. Jones' conduct support any inference of discrimination based on sex.  As to Mr. Vazquez, Plaintiff has not established that he was similarly situated because he was never the subject of a complaint to human resources.  Moreover, his conduct differed meaningfully because it did not involve physically touching a co-worker without her consent.

Similarly, Ms. Jones' alleged remarks regarding Ms. Williams-Johnson's perceived sexual orientation do not support a reasonable inference of discrimination.  As explained above, "a supervisor's discriminatory animus may support liability only if the supervisor was,

---

[16] Plaintiff also contends that Defendant has offered inconsistent explanations for her termination such that a reasonable factfinder could infer pretext.  (ECF No. 44-2 at 13); *see also E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001) (collecting cases concluding that employer's "different justifications at different times" for adverse employment action may be probative of pretext).  In this case, however, Defendant's core explanation for Ms. Williams-Johnson's termination—that her conduct in gifting lingerie to Ms. Peterson and touching Ms. Peterson's hand without consent in the workplace violated Defendant's policies—has remained consistent.  *Compare* (ECF No. 42-10 at 2 (termination notice citing violation of company policy and physical contact with co-worker as basis for termination); *with* (ECF No. 42-14 at 10–11 (Ms. Levitan deposition stating that termination decision was made after investigation of incident with Ms. Peterson); ECF No. 42-5 ¶¶ 4–9 (stating termination decision was made based on contents of Ms. Peterson's complaint, Ms. Williams-Johnson's alleged refusal to cooperate in investigation, and Ms. Williams-Johnson's prior written warning)).  Plaintiff has admitted that she gifted the clothing to Ms. Peterson and that she did not tell Ms. Levitan or Mr. Manokey that she did not touch Ms. Peterson's hand.  As explained above, she has offered no facts to refute that this conduct presents a nondiscriminatory reason for her termination.

26

in effect, 'principally responsible for, or the actual decisionmaker behind, the action,' such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation." *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quoting *Hill*, 354 F.3d at 291 (en banc)).   Ms. Jones had no role at all—let alone a significant role—in the decision to terminate Ms. Williams-Johnson.  *See Hill*, 354 F.3d at 291.   For this reason, Plaintiff has not established any causal connection between Ms. Jones' alleged remarks and her termination.  *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) ("[I]n the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced.").   Indeed, it is not clear from the record that the ultimate decisionmaker—Ms. Levitan—even knew of Ms. Jones' alleged comments at the time she decided to terminate Ms. Williams-Johnson's employment.

Finally, neither the speed of Ms. Levitan's investigation nor her comments during the termination meeting would allow a reasonable jury to reach an inference of discrimination based on sex.  The swiftness of an internal investigation of a human resources complaint is not necessarily indicative of discrimination.  *See McKinnish v. Brennan*, 630 F. App'x 177, 183 n.4 (4th Cir. 2015) (noting "thorough yet swift investigation" was not evidence that investigation of plaintiff prior to her termination was "a 'sham'").  Moreover, as the Fourth Circuit has explained "[e]ven if the[ employer's] investigations were improper or substandard, that does little to help [plaintiff] establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination." *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011).  A plaintiff's "own assertions of discrimination in and of themselves are insufficient to

27

counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (citing *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1288 (4th Cir. 1985)). Ms. Williams-Johnson has proffered no evidence to refute Defendant's assertion that her termination was based on her violation of Paris Foods' "Respectful workplace policy" by gifting Ms. Peterson a transparent negligee and allegedly touching her hand without her consent. (ECF No. 42-14 at 4, 7–10; ECF No. 42-10 at 2.)[17] *See DeJarnette*, 133 F.3d at 299 (requiring plaintiff to "specifically refute the facts" supporting defendant's nondiscriminatory reason).

Ultimately, "this Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . .'" *DeJarnette*, 133 F.3d at 299 (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). Ms. Williams-Johnson has proffered no evidence from which a reasonable jury could conclude that Paris Foods terminated her *because of* her sex or perceived sexual orientation rather than her conduct toward Ms. Peterson. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED.

---

[17] Similarly, a reasonable jury could not infer sex-based discrimination from Ms. Levitan's comment that she had to treat Ms. Williams-Johnson as she would treat a man. Even drawing all inferences to favor Plaintiff, that comment suggests that Ms. Levitan endeavored to address the situation in a gender-neutral manner.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED.

A separate Order follows.

Date: August 3, 2026

/s/

Richard D. Bennett
United States Senior District Judge